Filed 6/22/21  P. v. Logan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY LOGAN,<br><br>    Defendant and Appellant. | B304591<br><br>(Los Angeles County<br>Super. Ct. No. A638508) |

APPEAL from an order of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Reversed and remanded with directions.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy

Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

_____

Gregory Logan, convicted in 1990 of first degree murder and second degree robbery, appeals the superior court's order, made following an evidentiary hearing, denying his petition for resentencing under Penal Code section 1170.95[1] after finding he could still be convicted of murder notwithstanding the changes to accomplice liability for murder effected by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). Logan argues it is unclear whether the court applied the correct standard of proof (that is, that the People must prove every element of liability for murder under the amended statutes beyond a reasonable doubt, as this court held in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted March 10, 2021, S266652 (*Rodriguez*)) and, in any event, the court failed to find he had acted during the robbery with reckless indifference to human life within the meaning of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), as now required to be convicted of felony murder. We reverse and remand for a new evidentiary hearing at which the superior court is to apply the beyond a reasonable doubt standard of proof and make express findings as to the required elements for a felony-murder conviction pursuant to section 189, subdivision (e)(3).

---

[1]     Statutory references are to this code.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Logan's Trials, Conviction and Appeal*

    a. *The charges*

Logan was charged together with Randolph Hawkins in an amended information filed in March 1989 with first degree murder (§ 187, subd. (a)) with a felony-murder special-circumstance allegation (§ 190.2, subd. (a)(17)), kidnapping (§ 207, subd. (a)), kidnapping for robbery (§ 209, subd. (a)) and second degree robbery (§ 211). It was specially alleged Logan and Hawkins had personally used a firearm while committing the offenses (§12022.5) and Logan had a prior serious felony conviction (§ 667, subd. (a)). The court severed the trial of the two defendants.[2]

At Logan's first trial the court granted Logan's motion for judgment of acquittal on the kidnapping and kidnapping for robbery charges. After closing argument a juror notified the court she had received an anonymous threatening telephone call in the middle of the night. The court declared a mistrial. The People and Logan thereafter agreed to a court trial based on the transcripts and evidence presented at Logan's first trial. The People agreed to dismiss the kidnapping-murder special-circumstance allegation and to amend the firearm enhancement to principal-armed (§ 12022, subd. (a)), rather than personal use.

---

[2]    Hawkins had been charged with an unrelated murder, and the court believed it would be unduly prejudicial to try Logan together with Hawkins. Hawkins was convicted on all charges after a jury trial and sentenced to an indeterminate state prison term of life without parole.

b.  *The evidence at trial*

According to the testimony of Willie Hearod, he, Hawkins and Logan walked to the Hoover Plaza Hotel at West 81st Street and South Hoover Street on the evening of September 24, 1986. Hearod stayed to play cards; Hawkins and Logan left.  About 30 minutes later Hawkins and Logan returned with a 1984 Cadillac El Dorado that belonged to the murder victim, Raymond Curtis.

Hawkins asked Hearod to go with them to commit robberies in Santa Monica; Hearod declined.  Hearod asked where Hawkins and Logan got the car.  Logan explained that he and Hawkins were near 81st Street and Figueroa when they saw a man walking toward the car.  Hawkins, who wanted to steal the car, pulled out a gun, told the man to freeze and then put him in the trunk of the Cadillac.  Hawkins and Logan drove back to the Hoover Plaza Hotel to get Hearod.

When Hearod said the police would be looking for the car, Hawkins responded that would not happen because the owner was in the trunk.  Hawkins and Logan again left, but returned a short while later.  Hearod asked about the man in the trunk; Hawkins said, "A dead man can't testify in court for kidnapping." Hawkins then told Hearod they had driven to 95th Street where Logan let Curtis out of the car to allow him to walk away. Hawkins thought Logan was being stupid, chased after Curtis and shot him multiple times.  During the conversation Logan said he also shot at their victim, but Hawkins called him a liar and said he saw Logan "shoot in the air."

In a police interview following his arrest on September 25, 1986, the transcript of which was admitted into evidence, Logan generally corroborated Hearod's testimony.  According to Logan,

around 8:00 or 9:00 p.m. on September 24, 1986, while he and Hawkins were walking on 81st Street, they saw a car with blinking lights. Hawkins wanted to steal the car. Hawkins and Logan ran toward Curtis, who was walking near the car; Hawkins drew his gun; and Curtis dropped the keys, which Logan picked up. Logan then began looking inside the car. Hawkins wanted to leave and put Curtis in the trunk so he could not notify the police. After the men returned to the hotel, they moved Curtis to the back seat of the car. Logan understood they were going to drop Curtis off some place. When they let Curtis out of the car near the freeway, Logan told him to walk away. Curtis started to run; and Hawkins ran after him, shooting Curtis several times as he did. Hawkins and Logan then returned to the Hoover Plaza Hotel before driving to Santa Monica to attempt additional robberies.

Around 1:00 a.m. on September 25, 1986 a security officer at a hospital undergoing reconstruction at West 95th Street and South Broadway heard four gunshots. A short while later he saw a man staggering in pain. The security officer called the police emergency number. Los Angeles Police Officer Herbert Maples and his partner responded to the call. Maples found Curtis dead, leaning against a lamp post. A medical examiner from the Los Angeles County Coroner's Office determined Curtis had been shot four times in the back; two of the gunshot wounds were fatal.

c. *The court's ruling, sentence and appeal*

The trial court found Logan guilty of "first degree felony-murder as alleged in Count I as an aider and abettor. The court finds that the robbery was still in progress while the victim was still being held by Defendant and Mr. Hawkins. The temporary stop at the Hoover Plaza Hotel was not sufficient to terminate the

continuing robbery. The court further finds the enhancement for principal armed with a firearm to be true, also finds Defendant guilty of robbery, second degree, as charged in Count IV."

The court sentenced Logan to an indeterminate state prison term of 26 years to life. We affirmed the judgment after Logan's appointed counsel filed an opening brief raising no issues pursuant to *People v. Wende* (1979) 25 Cal.3d 436. (*People v. Logan* (July 15, 1992, B051646) [nonpub. opn.].)

2. *Logan's Petition for Resentencing*

On January 7, 2019 Logan, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Logan checked several boxes on the printed form petition establishing his eligibility for resentencing relief, including the boxes stating he had been convicted under the felony-murder rule and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill 1437.

The court appointed counsel to represent Logan. The People filed an opposition to the petition contending section 1170.95 was unconstitutional and a second opposition arguing Logan was ineligible for resentencing because he was a major participant in the underlying robbery and kidnapping and had acted with reckless indifference to human life. With the second opposition the prosecutor submitted transcripts of witness testimony from Logan's 1990 trial and a transcript of Logan's police interview. Logan filed a reply memorandum, responding to

6

both the constitutional arguments and the contention he was ineligible for resentencing.[3]

Although the court did not formally issue an order to show cause, it scheduled an evidentiary hearing that, after several continuances, was held on January 29, 2020. Logan was present at the hearing with his appointed counsel.

3. *The Evidentiary Hearing and the Court's Ruling*

At the outset of the hearing the court stated it had reviewed all the transcripts from Logan's initial jury trial and other material from the record of conviction that had been submitted by the parties, including Logan's police interview.[4] The prosecutor summarized the evidence in general and then in the context of the five factors identified in *Banks, supra,* 61 Cal.4th 788 for determining whether a defendant, found guilty of the felony-murder special circumstance, had been a major participant in the underlying felony.[5] Based on that review, she

---

[3]  The superior court did not address the prosecutor's constitutional arguments, and the Attorney General does not contend section 1170.95 is invalid.

[4]  Judge Patrick Connolly heard Logan's petition for resentencing. Judge Madge S. Watai, who had presided at Logan's second trial and his sentencing hearing, left the Los Angeles Superior Court in the mid-1990's. (See § 1170.95, subd. (b)(1) [the petition should be heard by the judge who originally sentenced the petitioner, if available].)

[5]  In *Banks* the Supreme Court identified five factors courts should consider in determining whether a defendant was a major participant within the meaning of section 190.2, subdivision (d): "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What

7

argued Logan not only was a major participant in the robbery of Curtis but also had acted with reckless indifference to human life during the course of the crime: "From the People's point of view, it's just not reasonable, Your Honor, that the victim of a robbery and a carjacking would be put in the trunk and left to tell the story later. As soon as he got in that car, his fate was sealed."[6]

For his part, Logan's counsel mentioned in passing the terms "major participant" or "reckless indifference,"[7] but did not address the factors identified in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, instead emphasizing the general

---

awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

[6] After completing her analysis of Logan's role as a major participant in the robbery, the prosecutor explained, "I think to show the reckless indifference to human life, I would be going to over the same facts that I covered in whether he was a major participant." The court simply responded, "All right."

[7] Responding to the prosecutor's discussion of Logan's actions later in the morning after Curtis's murder, Logan's counsel argued the court should "narrowly focus on what his conduct was when the car was taken, when the victim was put in the trunk, and when the victim was murdered. And I do not believe that his actions right then and there amount to acting as a major participant in the robbery, acting with reckless indifference to human life. It is Randolph Hawkins who decide[d] to assassinate Mr. Curtis in cold blood."

8

purpose of Senate Bill 1437: "According to Mr. Hearod's testimony, Mr. Hawkins thought Gregory Logan would let him go—let the victim go, I'm saying, because he's stupid and he could not abide by that. Randolph Hawkins made the decision to execute Mr. Curtis, and Randolph Hawkins shot the man. . . . Under the changes in our law, the hard man who acts as the real deal is the one who gets punished for murder. The patsy who goes along for the ride should be punished as an accessory. I believe that the evidence in this case overwhelmingly shows that Gregory Logan participated in the robbery, but not more than that. He is not guilty of murder."

After counsel completed their arguments, the court proceeded to go through its view of the evidence in light of the *Banks* factors. As to Logan's role in planning the crime, the court stated, "What I have before me is that they both were active participants . . . before the robbery and after it. Before the murder and then after the murder, they wanted to do more robberies. So to say that Mr. Logan was not integral to that planning would be false." With respect to supplying the lethal weapon, the court said, "I think that the evidence in this case does not make it clear as to who supplied the weapon, although I believe that the inference is pretty clear that it was Mr. Hawkins. . . . And it's clear to this court that Mr. Hawkins did this execution. . . . It is also clear to this court that at the time of the murder itself, that Mr. Logan fired a shot. He was armed. And I think that the belief there were two weapons is reasonable."

"As far as awareness posed of the dangerousness of the actions, Mr. Logan was present for this victim being placed in the trunk of a vehicle. . . . I don't believe for one second, regardless of

whether or not Mr. Logan wanted to let him go, that he doesn't know what they are doing at that time. . . . Regardless of whether or not he's let out . . . Hawkins knows what's going on, but I think so does Mr. Logan. But Logan fires a shot. Whether it's up in the air, whether it's to scare this individual, whether it's at him, it's not clear. I tend to believe—and I'm making the record—that it would be up in the air."

As to the fourth *Banks* factor, which the court described as whether Logan was able to prevent or facilitate what occurred, the court stated, "I don't know if Mr. Logan could have prevented it. I think that Mr. Hawkins was a bad ass, and I don't think that Mr. Hawkins would have allowed anyone to intervene at that point. But I don't believe for one second that Mr. Logan tried to intervene nor was that his intent." Finally, as to Logan's actions after the murder, the court noted that Hawkins and Logan went back to the Hoover Plaza and still tried to recruit assistance for additional robberies in Santa Monica.

The court concluded with its ruling, "Based on everything I've stated, the transcripts that I've looked at and the arguments of the attorneys, the court does find that Mr. Logan was a major participant. The court is going to deny the motion to dismiss at this time. . . . [F]or the reasons that I've stated, him having the gun and going out there and firing first, his actions both before and after, as such, pursuant to *Banks* and the factors that they have given for guidance, I don't believe that there is any way to find Mr. Logan other than a major participant."

The court's minute order, in addition to detailing the items that had been admitted into evidence, simply stated, "The court has made a determination that the defendant was a major

10

participant and is not eligible for the relief sought.  [¶] Resentencing is denied."

Logan filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839 (*Gentile*)) and significantly narrowed the felony-murder exception to the malice requirement for murder.  (§§ 188, subd. (a)(3), 189, subd. (e); see *Rodriguez, supra*, 58 Cal.App.5th at p. 236, review granted; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.) Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Gentile*, at p. 859.)

If the petition contains the information required by section 1170.95, subdivision (b), and the court, following the procedures detailed in section 1170.95, subdivision (c), determines the petitioner has made a prima facie showing that he or she is entitled to relief, "the court shall issue an order to show cause."  (§1170.95, subd. (c); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328 (*Verdugo*), review granted Mar. 18, 2020, S260493 [describing two-step process under section 1170.95, subdivision (c)]; see also *People v. DeHuff* (2021) 63 Cal.App.5th 428, 435-436 [same]; *People v. York* (2020) 54 Cal.App.5th 250,

11

262, review granted Nov. 18, 2020, S264954 [same]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054, review granted Sept. 23, 2020, S263939 [same]; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, S264684 [section 1170.95, subdivision (c), contemplates only one prima facie review before an order to show cause issues].)

Once the order to show cause issues, the court must hold an evidentiary hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted.)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

> 2. *The Prosecutor's Burden of Proof:  Criminal Liability for Murder Beyond a Reasonable Doubt*

Section 1170.95, subdivision (d)(3), provides, at the evidentiary hearing to determine whether the petitioner is entitled to relief, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  In *Rodriguez*, *supra*, 58 Cal.App.5th 227, 238-239, review granted, we held this language requires the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law to establish a

12

petitioner's ineligibility for resentencing.  (Accord, *People v. Fortman* (2021) 64 Cal.App.5th 217, 224-225; *People v. Duchine* (2021) 60 Cal.App.5th 798, 814; *People v. Clements* (2021) 60 Cal.App.5th 597, 603, review granted Apr. 28, 2021, S267624; *People v. Lopez* (2020) 56 Cal.App.5th 936 (*Lopez*), review granted Feb. 10, 2021, S265974.)  Once the petitioner has made a prima facie showing of eligibility for relief, we concluded, "[I]t is the court's responsibility to act as independent fact finder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3)." (*Rodriguez*, at pp. 243-244.)

Our opinion in *Rodriguez, supra*, 58 Cal.App.5th 227, review granted, considered the statutory language and legislative history of Senate Bill 1437 and, based on that analysis, expressly disagreed with the contrary view set forth in *People v. Duke* (2020) 55 Cal.App.5th 113, review granted January 13, 2021, S265309, which held the prosecutor must only prove a reasonable jury could find the defendant guilty of murder with the requisite mental state—the substantial evidence standard of proof.  (See *Rodriguez*, at pp. 240-242.)  Unless we receive different instructions from the Supreme Court, we adhere to the holding in *Rodriguez*.[8]

_____

[8]     In granting review in *People v. Rodriguez*, S266652, the Supreme Court ordered further action deferred pending consideration and disposition of the related issue in *People v. Duke*, S265309.  In *Duke* the Supreme Court limited the issue to be briefed and argued to the following:  "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under . . . section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for

13

3. *Remand Is Necessary for the Superior Court To Use the Proper Standard of Proof and To Make Findings on All Required Elements of the New Felony-murder Rule*

  a. *The proper standard of proof*

The section 1170.95, subdivision (d), evidentiary hearing in this case was held on January 29, 2020, prior to any published decision discussing the nature of the prosecutor's burden of proof under section 1170.95, subdivision (d)(3)—that is, whether the prosecutor is obligated to prove beyond a reasonable doubt each element of the crime of murder as now defined, as we held in *Rodriguez*, *supra*, 58 Cal.App.5th 227, review granted; only that substantial evidence would support such a finding, as the court held in *People v. Duke*, *supra*, 55 Cal.App.5th 113, review granted; or that the petitioner is ineligible for relief based on some other hybrid or different standard.[9]  Neither party addressed that issue during argument or in the briefs submitted to the superior court.  And the court, which acknowledged this was the first formal evidentiary hearing it had conducted pursuant to section 1170.95, subdivision (d), never articulated the standard of proof it was applying.  As discussed, in its oral ruling the court simply stated, "[T]he court does find that Mr. Logan

murder under . . . sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

[9]  *People v. Duke*, *supra*, 55 Cal.App.5th 113, review granted, the first published case considering the issue was decided on September 28, 2020.  *Lopez*, *supra*, 56 Cal.App.5th 936, review granted, disagreeing with *Duke* was filed October 30, 2020.  Our decision in *Rodriguez*, *supra*, 58 Cal.App.5th 227, review granted, was filed December 7, 2020.

14

was a major participant. . . . I don't believe that there is any way to find Mr. Logan other than a major participant."

Emphasizing the general presumption a trial court is aware of and followed governing law does not apply when "the law in question was unclear or uncertain when the lower court acted" (*People v. Jeffers* (1987) 43 Cal.3d 984, 1000), and the lack of a clear statement by the superior court that it used the beyond a reasonable doubt standard of proof, Logan urges us to reverse the order denying his petition and remand for a new evidentiary hearing using the proper standard.

The Attorney General concedes the superior court did not articulate the standard of proof it was applying but argues any error was harmless because its denial of Logan's petition was proper under *People v. Duke*, *supra*, 55 Cal.App.5th 113, review granted. Under that standard, the Attorney General explains, the court must find the petitioner ineligible if any rational jury could find him or her guilty beyond a reasonable doubt, rather than requiring the judge at the section 1170.95, subdivision (d)(3) hearing, acting as an independent factfinder, to so find. As discussed, we have held *Duke* was wrongly decided and adhere to the view we expressed in *Rodriguez*, *supra*, 58 Cal.App.5th 227, review granted.

The Attorney General alternatively argues, even if our decision in *Rodriguez* and that of the court of appeal in *Lopez*, *supra*, 56 Cal.App.5th 936, review granted, are correct, "the trial court's analysis was sufficiently broad to encompass the standard" set forth in those decisions. By way of explanation the Attorney General states, "Given that the trial court detailed each and every portion of the record [as it related to the *Banks* factors], there is no question that its ultimate conclusion that

15

appellant was a major participant who acted with reckless indifference to life satisfies the *Lopez* and *Rodriguez* standards that the court must act as an independent trier of fact."

The problem with the superior court's ruling, however, is not that the court did not make findings; it certainly did. But beyond a reasonable doubt is nowhere mentioned in the court's oral ruling, which covers seven pages in the reporter's transcript, or its written minute order; and the Attorney General does not suggest the court actually employed that standard.[10] Although the Attorney General contends the court would have reached the same conclusion concerning Logan's ineligibility for relief if it had articulated and used the *Lopez/Rodriguez* standard, he does not argue the record establishes Logan's ineligibility as a matter of law, nor could he since the superior court effectively rejected any such claim when it found a prima facie case had been established and set the matter for an evidentiary hearing. Under these circumstances, a remand for the court to expressly determine Logan's eligibility for relief under the proper standard of proof is necessary.

b. *Reckless indifference to human life*

Section 189, subdivision (e), which permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved, incorporates in subdivision (e)(3) the same requirements as necessary for a felony-

---

[10] Several of the court's intermediate findings belie any contention it was applying something akin to the beyond a reasonable doubt standard. For example, the court stated, "I think that the belief that there were two weapons is reasonable," and "Hawkins knows what's going on, but I think so does Mr. Logan."

16

murder special-circumstance finding: "The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

As explained in *Clark*, *supra*, 63 Cal.4th at page 615, the "major participant" element is the actus reus of the felony-murder special-circumstance requirement; and the "reckless indifference" element is the mens rea requirement. Although the two requirements often overlap, they are separate; and both must be proved. (*Ibid.*; see *Banks*, *supra*, 61 Cal.4th at p. 810, fn. 9 [a major participant in an armed robbery that results in a death does not necessary exhibit reckless indifference to human life].) Reckless indifference, the Supreme Court said in *Clark*, "encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. . . . [R]ecklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'" (*Clark*, at p. 617.) The *Clark* Court set out a series of factors, similar in some respects, but nonetheless distinct from the *Banks* major participant factors, to assess whether a participant in an underlying felony had acted with reckless indifference to human life. (*Id.* at pp. 618-622.) Specifically with respect to the facts before it, the *Clark* Court emphasized, "[W]hile the fact that a robbery involves a gun is a factor beyond the bare statutory requirements for first degree robbery felony murder, this mere fact, on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance." (*Id.* at p. 617.)

The superior court found Logan was a major participant in the Curtis robbery, but made no finding that he had acted with reckless indifference to human life during the commission of the crime. Logan argues that omission requires reversal and a remand for a new evidentiary hearing. In response the Attorney General notes both parties referred to reckless indifference in their briefs and oral argument; cites the presumption a trial court is aware of and follows the applicable law (see *In re Julian R.* (2009) 47 Cal.4th 487, 499); and argues, viewed in context, "it appears that the court's use of the phrase 'major participant' (an issue not even in dispute) was intended as a shorthand reference to the overall requirement for felony murder, i.e., that appellant was a major participant who acted with reckless indifference to human life."

Positing an implied finding on one of the two elements at issue in the resentencing proceedings may be appropriate in some circumstances, but seems unjustified here where the parties and the court focused on *Banks*, *supra*, 61 Cal.4th 788, and the factors identified in that case for evaluating a major participant finding, and neither the parties nor the court discussed *Clark*, *supra*, 63 Cal.4th 522, and its identification of factors relevant to the reckless indifference element of a felony-murder special-circumstance finding. Indeed, although the prosecutor and Logan's counsel made brief references to reckless indifference, the court never mentioned that element of the new felony-murder rule during the evidentiary hearing.

Because the failure to specify and apply the proper reasonable doubt standard of proof requires reversal of the order denying Logan's petition and a remand for a new evidentiary hearing, we need not decide whether, standing alone, the court's

18

failure to specifically find that Logan had acted with reckless indifference to human life would also require a new hearing. On remand, however, the superior court must make express findings on both required elements for liability under the felony-murder rule.

## DISPOSITION

The order denying Logan's section 1170.95 petition is reversed, and the cause remanded for a new evidentiary hearing at which the superior court is to apply the beyond a reasonable doubt standard of proof and make express findings as to the required elements for a felony-murder conviction pursuant to section 189, subdivision (e)(3).


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.


19